Our final case for today is 21-2359. I feel like it's Groundhog Day and I want to go Murray-Loop, but it's Medtronic v. Teleflex. Miss, is it, how do I say your name? Graber. Miss Graber, please proceed. May it please the court, Jennifer Graber on behalf of Medtronic. The board's first legal error was constraining the prior art reference, Ressamon, to its intended purpose instead of considering Ressamon for everything it taught. Ressamon's purpose of protecting against Emboli does not- Just to back up for one moment, this IPR does not involve secondary considerations. There's no reliance by the board on the secondary considerations here, right? That's correct, Your Honor. There's no secondary considerations at issue in this appeal. Ressamon's purpose of protecting against Emboli does not detract from a skilled artisan's motivation to use features from Ressamon in a combination with features from Takahashi to achieve a different benefit. This is a long-established principle of obviousness. As Judge Rich explained in EWP, a reference must be considered for everything it teaches by way of technology and is not limited to the particular invention that the prior art reference is describing and attempting to protect. The board misunderstood this court's decision in Polaris v. Arcticat as though it created a rigid legal rule that if a combination did not serve an intended purpose of a reference, that would, in and of itself, legally negate any motivation to combine. But Polaris did not create such a constraint on obviousness. Rather, the prior art reference in Polaris contained a statement criticizing the result of the combination. That was involving an ATV, and if you had added a fuel tank under the seat, as proposed by the combination, that would raise the center of gravity, which the prior art reference there specifically criticized. But unlike in Polaris, Ressmont does not teach away or criticize the result of the combination, a guide extension catheter with a one French size difference. This case is much more like in Ray Urbanski, which was authored by Judge Lorry. There, the court explained that nothing in the prior art teaches that the proposed modification would have resulted in an inoperable process, regardless of whether the intended purpose of the primary reference would have been served by the combination. That's exactly what we have here. Here, Teleflex does not dispute that the proposed modification to Ressmont would be operable as combined. It would deliver therapeutic devices, such as scents or balloons. And indeed, the board never found that Ressmont taught away from achieving the proposed modification, the one French size, nor could it, as there's no such criticism in Ressmont of the resulting modification. Teleflex's legal argument to the board and now to this court, wrongly constrains obviousness to a primary reference's intended purpose, which is essentially an attempt to revive the teaching suggestion motivation test, where a reason for a combination had to be found in the reference itself. But that rigid approach to obviousness is contrary to KSR, where the Supreme Court explained that the prior art- Why is Teleflex wrong when it argues that the board found that the entire premise of Ressmont's Emboli protection device is using ceiling balloons? So what the board found was that the primary purpose or the intended purpose of Ressmont- No, not the primary. They actually said the entire premise. There are three opinions, and one of them says the entire premise. I do agree with you, Your Honor. But the entire premise would be to protect against Emboli, and that could be achieved by using ceiling balloons on the Ressmont device. But what Teleflex is essentially arguing is that that purpose has to be served. You cannot combine Ressmont with any other device. The board said the entire premise is using ceiling balloons. Their expert came along and said ceiling balloons are critical to Ressmont, and the board found you wouldn't be motivated to take the ceiling balloons out of Ressmont and substitute something else. Why is that wrong? I mean, if a reference, if there's a conclusion that a reference has an absolutely critical component, and that seems to be the fact-finding that was reached here, and there seems to be evidence to support it, why is the board erring? Because what you're really raising is a question of fact, not a legal question. So why is there no substantial evidence for the fact-finding that one wouldn't have been motivated to make this combination because it involves removing the critical element? Well, Your Honor, that's focusing on the intended purpose of Ressmont itself? No, it's not focusing on the intended purpose. It's focusing on the notion that Ressmont stands for the entire premise. It has a critical element. It's not an intended purpose. If a reference says this element is critical, all of my embodies include it, the present invention includes the following, why isn't that enough for the substantial evidence that's necessary? That's not enough, Your Honor, because even if it was critical for the Ressmont device, the board was required to look at Ressmont for everything that it taught. A person of ordinary skill is also a person of ordinary creativity, and so a person of ordinary skill would look at Ressmont for everything it taught, including its purpose, and this is not disputed by TELEFLEX, its purpose to deliver therapeutic devices like stensiloid balloons to a target treatment site that's in column six of Ressmont, and would, as a person of ordinary creativity, would take that aspect of Ressmont, regardless of the purpose of Ressmont. So, for example, in KSR, the purpose there was. No, it's not purpose, right? Like, we're talking about a thing, a ceiling balloon. That's not a statement of purpose yet. The purpose in Ressmont is to include blood flow and prevent emboli from traveling. That's the purpose, but they have a particular way of doing it, and at least the board found, based on expert testimony, that the way of doing it using ceiling balloons was absolutely critical to that reference. So why would a skilled artisan be motivated to take the ceiling balloons out? So the ceiling balloons were critical to the purpose of protecting against emboli. It was not critical to other things that Ressmont taught, such as delivering therapeutic devices. This is actually a legal issue, and there is some authority about it. And our Intel decision says the fact that you don't achieve the purpose of the prior art reference is not controlling. Arctic Cat seems to suggest that maybe it's not controlling, but it could be relevant under some circumstances. But as I read the Arctic Cat decision, that's a situation in which the purpose in the prior art was also a purpose of the invention, vehicle stability. So where are we on this legal issue, which seems to be relevant to what the board did? Well, that's exactly right, Your Honor. So in Intel versus Qualcomm... Well, it's good that you realized that was what we call a friendly question. Well, and Judge Dyck is completely correct. In Intel versus Qualcomm, the court reinstated KSR's holding that the intended purpose does not control, just because the variable gain mixer in that case could have been turned off, that does not, as Your Honor said, this is a legal question here. There's no substantial evidence for that. Now, I think, to Your Honor's question, kind of where is the line drawn? And my answer is that the board should have considered everything that the reference has taught, and that includes teaching away, as there was in Polaris. So there, there was a criticizing statement of the result. So if you had added this fuel tank, it would raise the center of gravity, and that would render the vehicle less stable. Here, you can remove the ceiling balloons, that wouldn't affect the combination as proposed, which is Resiman and Takahashi, in order to deliver therapeutic devices, such as sensor balloons, unrelated to the intended purpose. So because the board legally erred on focusing on the intended purpose of Resiman, rather than everything Resiman taught, reversal, or at least a remand, is necessary. There's a separate reason that a remand is needed for the one French claims. Just as in Apple versus Andrea, it was an abuse of discretion for the board to disregard Medtronic's reply arguments that directly responded to Teleflex's patent owner response. No one suggested that Teleflex was somehow prejudiced here, Teleflex doesn't claim it, and the board didn't find it, which is not surprising, given that Teleflex was allowed to, and did file a surreply, and address the issue at the oral hearing. Medtronic's petition proposed combining Resiman with Takahashi by removing the ceiling balloons. Hey, you're just reading, and you're reading at warp speed. You gotta slow down and make an argument, because you're reading so fast, I can't even follow what you're saying. Okay. So look at me, try to make an argument. That way I'll be able to follow you. Or you don't have to look at me if you don't want to, but don't read so fast, how about that? Yeah, so the argument that I'm making, Judge Moore, is that it was an abuse of discretion for the board to not consider the reply arguments that Medtronic made. So in the patent owner response, Teleflex says, and this is at appendix page 21-7-26, that removing the ceiling balloons would entirely eliminate Resiman's embolic protection function, what we were just discussing. In reply, Medtronic was entitled to respond to Teleflex's argument, in which Medtronic explained that filters could be used and preserved that embolic function. The board doesn't consider these arguments in reply, calling it a new theory. But Medtronic's theory never changed. Medtronic's theory was Resiman, the Takahashi, by removing the ceiling balloons, as it remained in reply, Resiman and Takahashi, by removing the ceiling balloons. It was entitled to reply to its argument about this elimination argument. The ability to protect against emboli would not be eliminated by the proposed combination. In Happel versus Andrea, this court said that the board must consider the reply arguments that are responsive. Because it did not, that also requires a remand. I'll move now to the board's second set of error regarding the alternative design choice of the double incline. The first legal error was that the board rejected the motivation to use Kataishi's double incline opening to increase the area of entry for a stent or balloon, merely because an alternative design choice, a modified slope of a single incline instead of a double incline, could have been selected instead. The board agreed that the double incline shape was larger in area. So the evidence there is not disputed. It just found no motivation because another design choice existed, simply modifying the slope rather than a double incline. But the law is well-established here too, this predecessor court in Inouye Law back in 1962 said that a choice between design alternatives would have been obvious to a skilled artisan. I'll move quickly to the written description issue, which is the board's third error. The substitute claims, the plain language requires a side opening that is separate from the substantially rigid segment. The board failed to even consider whether the original disclosure would have conveyed to a skilled artisan that the applicant possessed the claim subject matter, a device with a side opening separate from a substantially rigid segment. This case is similar to Power Oasis, which Judge Moore authored, where the original application only disclosed a vending machine with a display for user interface as part of the vending machine. The court held that there was no written description support for a customer interface apart from the vending machine. As the Power Oasis court explained, that's because written description must actually or inherently disclose the claim element. Here, it's not disputed that the original disclosure does not actually describe a side opening apart from the substantially rigid segment, just like in Power Oasis. I see that I'm into my rebuttal time, so if there's no further questions, I will reserve the rest of my time. Yeah, we'll reserve your time for rebuttal. I'm just gonna make a sort of practice note, sort of comment. You know, it never works when you call out which judge authored an opinion. It actually feels dirty and icky. It makes us feel like you're trying to convince us that you should win because you're citing one of our personal cases. You both did it at different times today, and so I just wanna make that note. We write opinions on behalf of the court. It's not Judge Moore's opinion. It's not Judge Lurie's opinion. It's the court's opinion, and it just makes us feel a little uncomfortable when you call us out by name, so don't do that anymore. It's just a practice note. It's nothing to worry about. Thank you so much. It's a practice note. Is it Mr. Winkles? Yes. Okay, Mr. Winkles, please proceed. Thank you, Your Honors, and may it please the court. This case presents, exemplifies why motivation to combine is an important consideration in the case law in an obviousness analysis. On the one French- Well, it's important to get it right, too, and the question is, with respect to Ressaman and these one French claims, the board's reasoning, pretty much its entire reasoning, is this would not serve the purpose of Ressaman if you use the one French approach elsewhere, and I have difficulty in seeing why that's relevant to motivation to combine if that's not a purpose of the patented invention. How can it be that the failure to achieve some other purpose in the prior art defeats a motivation to combine, to use this aspect of the invention for another purpose in another invention? It seems to be very odd. The important point is, when a proposed change is so different and going to alter the principal operation of that piece of prior art, what this court's case law says is that that proposed change tends to show non-obviousness. Why? Why? Why? I mean, yes, if you take Arctic Cat, it's an issue of vehicle stability, which is relevant to the patented invention. Yes, it can be relevant, but if the purpose has nothing to do with the patented invention, and the purpose here of the balloon, the ceiling balloons at Russman has nothing to do with the purpose of this invention, right? It's a great point, and I disagree with that, and here's why, and I think this is an important point. When you look at the claim language, the limitation here is a one French limitation in the claim language. What that's saying is it's a one French difference between the inner diameter catheter and the guide catheter. It's essentially saying it's a close-fitting relationship. Russman, by design, is expressly not a close-fitting relationship. Russman, by design, is saying, I need to have these seals because I am concerned about embolic protection. I'm concerned about when I stick a stent up there that there's going to be a piece of emboli that goes up and migrates. It has nothing to do with this invention, right? It absolutely has something to do with this invention. Well, what does it have to do with this invention? This invention, in these claims we're talking about, is the one French limitation. There's an express limitation in the claims that says the inner diameter of the guide extension catheter is one French difference than the inner diameter of the outer catheter. And the petitioner's position is if you dispense with the sealing balloons, you can achieve the one French limitation. And we don't use sealing balloons because we're not serving the same purpose as Russman. We're not concerned with the emboli. This is where I think this court's law comes in. I think your question was a good one about the court's holding in Intel versus Polaris, and I want to talk about the Plaspat case as well. You correctly note that in Intel, this court said that the purpose in that case was not controlling. One thing, and in Polaris, or Articat, you correctly note that what that case stands for is that we need to look at the entire purpose. And that's exactly right. There is no bright line rule. This is a question of fact that the board analyzed, the board looked at expert testimony. And if you look at the Plaspat case, which I think is important in this analysis, Plaspat stands for the proposition that when there is a change that is going to alter the principal operation, that is absolutely relevant to the analysis. And that's exactly what the evidence says here. What are those cases that's saying that it's relevant to the analysis if that purpose of the prior art has nothing to do with the workability of the patented invention? And that's why I go back to the claim language that's at issue here, has the one French limitation. That's why they need to get rid of the ceiling balloons. Because they need to have the type of- The board didn't refer to it as teaching away, but isn't this basically a teaching away argument? You wouldn't modify this reference for all the reasons the board articulated on page 118, 119, and 120. It summarized the patent owner arguments and then said we adopt the patent owner's position summarized above. They go on and they explain that the ceiling balloon was absolutely critical to Restman. They cite the inventor expert testimony and they say nobody of skill in the art would have looked at Restman and been interested in taking ceiling balloons out and trading anything else. It is critical to the operability of that invention. And so it's kind of, although they didn't use the words teaching away, I don't see how this isn't a relevant characteristic in the motivation to combine concept. I completely agree on it. I think it's very akin to teaching away. Those words aren't used, but it's exactly right. And on this point, there is undisputed testimony from both experts. Teaching away if you're trying to achieve Restman's purpose, but why is it a teaching away if you don't care about Restman's purpose? But one of skill in the art would of course care about Restman's purpose. Why? If they're doing something entirely different, why do they care about Restman's purpose? I go back to my point. This is the whole point of motivation to combine and why we look at teaching away evidence because it all relates to, is one of skill in the art going to lean towards making this change or lean towards against making this change? And when you look at a reference like Restman, the entire point is to seal. Restman even ties, there's a portion of Restman that even ties the insertion of the scent, the second purpose that Medtronic wants to use. The whole point of Restman says, if I insert a scent, there may be emboli that may migrate and that's why I need to have a seal. Restman actually ties these two together, ties these purposes together. That's another important distinction with the Intel case. In the Intel case, not only was there not this critical purpose, this court found that that reference expressly contemplated the change. That reference actually expressly contemplated this kind of shunting or nulling the circuit. The opposite is true here. Restman, not only does Restman say, I have these healing wounds, Restman doubles down, doubles down. It's in every embodiment. It is so fundamental to that invention. I have a completely irrelevant to this discussion question. I'm just curious, why no secondary consideration here? Does the claims that issue in this case not embody the commercial embodiments, is that why? No, so in some of the claims, secondary considerations was argued below. The board did not reach that in some of these claims. And I believe it relates to- No, but that's important for me to know. So if we were going to, if for some reason we found that the board decision wanting, the board would still have to go back and reach secondary considerations in addition to the prima facie case evidence. If this court reversed and remanded, is that the question? Yes. Sorry. Yes, absolutely, in the 760 patent, that is on the one French claims that we're dealing with here. Secondary considerations were argued below. That was not reached because they found that they didn't need to reach those issues, but secondary considerations were already blown on that patent. You know what, it would have been good just as another practice point, since I gave to the other folks one, I'll give you one. It would have been great if like you had mentioned that in the brief somewhere. So we knew that there were still these other issues that pertain to the obviousness outcome, because obviousness is a question of law, right? It's not a question here on appeal. So it would have been useful to know that no, there are still other fact questions underlying that issue yet to be decided, should you disagree with us. So just next time, tell us that. Because we're all wondering, we just assumed, or at least my chambers, we just assumed maybe it wasn't co-extensive with the commercial embodiment or something. Yes, thank you. It's a great point, and there's obviously a lot of patents and a lot of claims and a big record here, so it's well taken. If I could make a couple comments on the double incline claims. The important point here, and I go back to motivation to combine. The argument here was we need to have a proximal opening that has a double incline. Medtronic's argument starts from a false premise. That was not known in the art. There is not a single reference that teaches a proximal opening with a double incline. There is not one. What Medtronic does instead is they went and looked at a suction catheter, a device that is different than Reston, which is an embolic protection catheter. They looked at a different catheter in a different location at the distal end that performs a different function and said that provides an obvious, that provides motivation and therefore it's obvious. This argument reeks of hindsight, and the board sought for exactly what it was. The board made specific factual findings here that the function of the distal end of the Kataishi suction catheter has no bearing on what is going on in the proximal opening of a device that is meant to receive interventional cardiology devices. The other thing that's important here to note is the difference in direction, and the board's decision hints at this. It talks about a distal to proximal direction versus a proximal to distal direction. In Kataishi, the thrombus is coming from a distal to proximal direction. The whole purpose of that device is to cover, or as our experts said, envelop, kind of wrap itself around a thrombus, which is a cloth, to suck that up. That's an entirely different purpose than the proximal opening of Reston, which is to receive interventional cardiology devices. As the proximal opening, that opening needs to stay open. It needs to maintain its luminal patency so that a device can go into it. Also, in the briefing and before the board, Medtronic argued that, well, we need to consider that there's material flowing through Reston. That's correct, but it's going in the opposite direction. Again, Kataishi is teaching to cover and envelop that thrombus at the distal end. At the proximal opening of Reston, when material, when embolite comes in, that opening needs to stay open. There's testimony from the expert that says, these are two fundamentally different things, and that's exactly what the board held. The last issue I want to address is written description. It was talked about briefly in oral argument. This case presents the not uncommon situation where the claims are simply drafted broader than exactly all the detail that's shown in the embodiments. And there is nothing wrong with that. This court has repeatedly held that there can be written description support in that instance, and here's how we know that. This is one of these interesting cases. We know that because the claims read exactly on one of the embodiments. If I take the claim language and I compare it to an embodiment, the claim reads right on the embodiment. That is the hallmark of written description support. The only instances this court has said that that's not allowed is the two main exceptions, in the unpredictable arts, or when the art is immature, or in the situation where there's some kind of criticality, or I like the, in the in red global case, it refers to a necessary versus an unnecessary limitation, whether there's a limitation that's critical. Can I ask you, are you making, I get the sense that you're making the argument that there is, in fact, written description support. Do you alternatively make the argument that the limitation for which Medtronic alleges lacks written description support, namely that they have to be the same, that providing a rigid segment and defining a side opening have to be physically the same and can't be physically separate? Do you argue that that's not actually a claim limitation, and so it doesn't matter whether there's written description support for that? So yes, if you look at these specific claims, that is actually not a claim limitation. And one of the things we point out is, their brief with this claim language starts from the false premise that says it's an express limitation. It's not, and that's the point that we point that out, because we're addressing their arguments, and their argument starts from a false premise. The claims- So if we agree it's not a claim limitation, then we don't have to worry about the written description argument. I think that, in and of itself, makes the written description argument even easier. But I would go even further and say, even accepting their premise that we somehow need to have support for a side opening that is outside the claim rigid portion, there is absolutely written description support for that. Again, if I take the claim language and I put it against one of the embodiments of the patent, I can see that that claim, under that interpretation, requiring separate and apart, reads exactly on one of the embodiments. And one thing that's important here is this criticality, whether there's a necessary limitation. If you look at this patent and the embodiments in the patent, what the patent says is, I've got a guide extension catheter and I've got a proximal opening. And it says, that proximal opening can be perpendicular or it can be angled. Preferably it's angled, but it can be perpendicular. We've got figure one, shows a perpendicular opening. Figure four and figure, I believe it's figure 12 and 13, show an angled opening, so it's figure four. The patent also shows that that opening can be cut into the reinforced portion, the flexible tubular portion, or the rigid portion. There is absolutely nowhere in the specification that says it has to be cut in the rigid portion. And it's very important and special because it's cut in the rigid portion. In fact, there's an embodiment in figure 10 and 11 that shows taking that metal collar and putting slits in it to make it more flexible. That's the point. This case presents the not uncommon situation where there's absolutely no criticality. And let me close. There's a great line from this court that I think is very apt to this point here. And if the court will bear with me, it's from the Rexnor case and it cites back to the SRI International case. It's an inbox decision from this court. And what it says is, if structural claims were to be limited to devices operated precisely as a specification described and embodiment is operated, there would be no need for claims. Specifications teach, claims claim. That's exactly what we have here, Your Honor. I see I'm out of time. Thank you. Thank you, Counsel. Ms. Graber. Two points, Your Honors. The first is with regard to the intended purpose. Teleflex states that this was essentially a teaching away finding. That's not what the board said and it's not what Teleflex argued to the board either. At appendix page 21-727, it told the board, this is a legal conclusion, a modification that would render the prior art reference inoperable for its intended purpose is not obvious as a rule. That's not true. And then cites Polaris for that legal proposition. Had the board wanted to make a teaching away finding, it should have considered Ressamon for all that it taught. If you look at appendix pages 42-43, for example, it doesn't cite column six of Ressamon once or any of the other teachings that Medtronic pointed it to. Had it wanted to make a teaching away finding based on this intended purpose being a core purpose, it could have, but it simply did not based on this legal error that Teleflex presented to it. So at a minimum, a remand would at least be required for the board to consider everything that Ressamon taught, including whether or whether there was teaching away. That's actually what happened in Polaris. This court remanded to the board to consider whether there was a teaching away and the board actually found that the statement in Polaris was not a teaching away statement that would negate motivation to combine. And then the second point on written description, Teleflex states that this is a claimed embodiment. That's just not true. What Teleflex is, I believe, arguing is that the claims as written could have the side opening in or out of the substantially rigid segment. That's not supported by the original disclosure. There's no written description to support that broader reading of the claims either. I see my time is running out, so if there's no further questions. I thank both counsels. This case is taken under submission.